**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER H. HALL,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:23-0494** |
| **v.** | : | **(JUDGE MANNION)** |
| **SUP'T MARK WAHL, _et al_.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

**I. BACKGROUND**

On March 21, 2023, Plaintiff, Christopher H. Hall, an inmate confined in the State Correctional Institution, Waymart, Pennsylvania (SCI-Waymart), filed the above-captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The named Defendants are SCI-Waymart, the Secretary's Office of Inmate Grievance and Appeals, former Secretary George Little, Superintendent Mark Wahl, and Unit Managers Joseph DeAngelis and Michael Skutack. Id. Plaintiff complains that Defendants have prevented and denied him the ability to pursue a post-secondary education. Id. For relief, Plaintiff seeks compensatory and punitive damages. Id.

Presently before the Court is Defendants' motion to dismiss the complaint for Plaintiff's failure to allege personal involvement of the named Defendants in any alleged constitutional harm. (Doc. 11). However, for the reasons set forth below, the Court need not address Defendants' motion to

dismiss the merits of Plaintiff's amended complaint, as the Court will *sua sponte* dismiss the above captioned action for Plaintiff's failure to exhaust administrative remedies.

## II. FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff states that in November or December of 2021, he "applied for the second chance Pell Grant on a video visit with [his] family through the application that is available through the phone app store" and "within ten days [he] received a response through [his] daughter's email with verification information and a few instructions, with a 1800-number." (Doc. 1).

Plaintiff then "contacted the FSFSA, through the 1800-number provided" and "they confirmed acceptance." Id. Plaintiff was provided with directions on how to submit applications to "ten schools of [his] preference." Id. He states that "in about two weeks, [he] contacted the financial aid department at Temple University which confirmed they could see [his] application in their system" and that "there would be no ramification pertaining to [his] incarceration." Id.

On August 9, 2022, "after being accepted in a promotional transfer, [Plaintiff] was transferred from a level five prison, SCI-Forest, to SCI-Waymart, a level two facility." Id.

Plaintiff states that sometime after August 10, 2022, he informed his Counselor, Mr. Mihal "about [his] schooling" and that "at that particular juncture [his] application was being handled by the secretary of [his] family's business and time was running short for acceptance for the approaching semester." Id. Plaintiff was "informed that schooling could not be done through correspondence, internet had to be available." Id. Counselor Mihal directed Plaintiff to Ms. Lipko regarding a request for internet. Id. Ms. Lipko informed Plaintiff that "currently internet access is not available to offenders at SCI-Waymart." Id.

Plaintiff "proceeded to the grievance process" and "after about 15 days [he] was called to the Unit Manager's office," where Mr. Skutack and Mr. D'Eangles "informed [Plaintiff, he] had two options, be transferred to another facility that offered schooling, this being SCI-Chester (liberal arts) or SCI-Mahanoy (rehabilitative justice)" or "drop [his] grievance due to Mr. Skutack offering [Plaintiff] what was available." Id. Plaintiff states that he "was not complacent with either option and denied." Id. Plaintiff indicated that he "was gonna push forward in the grievance process." Id.

Plaintiff appealed his grievance to Superintendent Wahl. Id. He claims that "while waiting for a response, [he] was called to the education counselor, Dr. Kabuki, who suggested [he] go a different route then the grievance

process but offered nothing pursuant to any results for schooling." Id. Superintendent Wahl upheld the initial grievance denial, informing Plaintiff that "there is a grant opportunity through Easter University" which "takes place at SCI-Chester" and Plaintiff 'may apply for this opportunity through education staff at SCI-Waymart." Id.

Plaintiff filed a final appeal to the Secretary's Office of Inmate Grievance and Appeals, who on January 13, 2023, dismissed Plaintiff's appeal, based on the following:

> You have not provided the required documentation for a proper appeal to final review. Specifically, you have not provided a copy of your appeal to the Facility Manager. Therefore, you appeal to this office is dismissed. Future correspondence regarding this matter may go [ ] without action or response.

(Doc. 1-1 at 14).

## III. DISCUSSION

Pursuant to the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. §1983, or any other federal law, he must exhaust all available administrative remedies. See 42 U.S.C. §1997e; Ross v. Blake, 578 U.S. 632 (2016). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532

(2002). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006)(footnote and quotation marks omitted). Requiring exhaustion provides prison officials a "fair opportunity to correct their own errors". Id. at 94.

"[T]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 212 (2007); Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 602 (3d Cir. 2015) (exhaustion of prison administrative remedies is mandatory under the PLRA). The only exception to the PLRA's exhaustion requirement is "built-in." As confirmed by the United States Supreme Court in Ross, supra: "A prisoner need not exhaust remedies if they are not 'available'". Ross, 578 U.S. at 636. Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires resolution of disputed facts. Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir. 2013).

Dismissal of an inmate's claim is appropriate when the prisoner has failed to exhaust his available administrative remedies before bringing a civil-

rights action. Nifas v. Beard, 374 Fed.Appx. 241, 245 (3d Cir. 2010) (nonprecedential) (affirming grant of summary judgment that dismissed claims without prejudice where administrative remedies were not exhausted prior to commencement of action); Oriakhi v. United States, 165 Fed.Appx. 991, 993 (3d Cir. 2006) (nonprecedential) (citing Ahmed v. Dragovich, 297 F.3d 201, 209 & n. 9) ("Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court.") Furthermore, the filing of an amended complaint after an unexhausted claim is presented to the court does not cure the infirmity. Id. at 209 (holding that "[w]hatever the parameters of 'substantial compliance' referred to there, it does not encompass a second-step appeal five months late nor the filing of a suit before administrative exhaustion, however late, has been completed. It follows that Ahmed cannot cure the defect in his action by the proffered amendment of the complaint.").

A plaintiff is not required to allege that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Nevertheless, *sua sponte* dismissal is appropriate where "the basis [of plaintiff's failure to exhaust his administrative remedies] is apparent from the face of the complaint." Id. at 297. Additionally, we take judicial notice of the

Pennsylvania Department of Corrections' three-tiered inmate grievance procedure as set forth in DC-ADM 804.[1] See Spruill v. Gilils, 372 F.3d 218, 232 (3d Cir. 2004).

> Pursuant to DC-ADM 804(1)(j):
>
> An inmate appealing a grievance to final review is responsible for providing the SOIGA with all required documentation relevant to the appeal. A proper appeal to final review must include:
>
> > (1) a legible copy of the Initial Grievance;
> > (2) a copy of the initial review response/rejection and/or remanded initial review response/rejection;
> > (3) **a legible copy of the Inmate Appeal to the Facility Manager**;
> > (4) a copy of the Facility Manager/designee's decision and/or remanded Facility Manager/designee's decision;
> > (5) a written appeal to the SOIGA;
> > (6) failure to provide any of the documentation noted above may result in the appeal being dismissed; and
> > (7) the copies of the initial review response/rejection and the Facility Manager/designee's decision cannot be handwritten.

http://www.cor.pa.gov. (emphasis added). Plaintiff's own exhibit demonstrates that Plaintiff failed to provide a copy of his appeal to the facility manager. (Doc. 1-1 at 14). Since the final appeal was dismissed, he did not exhaust his administrative remedies.

---

[1] The DOC's *Inmate Grievance System* policy, DC-ADM 804, can be found in the Inmate Handbook, and on-line at http://www.cor.pa.gov.

Accordingly, based on Plaintiff's own exhibit demonstrating Plaintiff's failure to exhaust claims, his complaint will be dismissed without prejudice pursuant to 28 U.S.C. §1997e(a). See Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000) (determining that dismissal without prejudice is appropriate when an inmate has failed to exhaust his available administrative remedies before filing an action under 42 U.S.C. §1983). The Court need not address Defendants' argument that Plaintiff complaint fails to establish the personal involvement of the named Defendants in any alleged constitutional harm. (Doc. 12 at 8-10).

## IV. CONCLUSION

For the reasons set forth above, the Court will dismiss the Complaint without prejudice pursuant to 28 U.S.C. §1915(e)(2)(B) for Plaintiff's admitted failure to exhaust administrative remedies. In light of this Court's *sua sponte* dismissal for Plaintiff's failure to exhaust administrative remedies, Defendants' motion to dismiss will be dismissed as moot.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 12, 2024**
23-0494-01

- 8 -